SEDGWICK LLP
Valerie D. Rojas (Bar No.180041)
valerie.rojas@sedgwicklaw.com
801 South Figueroa Street, 19th Floor
Los Angeles, California  90017-5556
Telephone:  213.426.6900
Facsimile:   213.426.6921

Attorneys for Plaintiff
SCOTTSDALE INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, | Case No. _____ |
| Plaintiff, | **COMPLAINT FOR DECLARATORY RELIEF** |
| v. | |
| NATIONWIDE MEDICAL, INC., HOWARD SIEGEL, DAVID SIEGEL and Does 1 through 10, inclusive, | |
| Defendants. | |

1

19835254v1

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Scottsdale Insurance Company ("Scottsdale"), for its Complaint for Declaratory Relief against Nationwide Medical, Inc. ("NMI"), Howard Siegel, and David Siegel (collectively, "Defendants"), alleges as follows:

## NATURE OF ACTION

1.      Scottsdale issued Business and Management Policy No. EKS3080654 (the "Policy") to NMI.

2.      Defendants seek coverage under the Policy for a claim made against them by John Calligeros (the "Calligeros Claim").

3.      An actual case or controversy within the meaning of 28 U.S.C. §2201 exists between Scottsdale and Defendants concerning whether Defendants are entitled to coverage under the Policy for the Calligeros Claim.

4.      In this action, Scottsdale seeks a declaration that no coverage is available for the Calligeros Claim under the Policy and, therefore, Scottsdale does not have any further defense or indemnity obligations with respect to the Calligeros Claim and is entitled to reimbursement of fees and costs.

## THE PARTIES

5.      Scottsdale is an insurance company duly organized and existing under the laws of the State of Ohio with its principal place of business located in Scottsdale, Arizona.

6.      NMI is a Nevada corporation with its principal place of business located in Agoura Hills, Los Angeles County, California.

7.      Howard Siegel resides in Los Angeles County, California.

8.      David Siegel resides in Los Angeles County, California.

## JURISDICTION AND VENUE

9.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1).  There is complete diversity of citizenship between Scottsdale and

2

19835254v1

Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper in this District pursuant to 28 U.S.C. §1391. NMI has its principal place of business in this District, and the individual Defendants reside in this District.

## FACTUAL ALLEGATIONS

### The Policy

11. The Policy is a claims-made-and-reported policy effective for the period from December 1, 2012 to December 1, 2013. A true and correct copy of the Policy is attached as Exhibit A.

12. Subject to its terms, conditions, and exclusions, the Policy provides certain coverage under a Directors and Officers and Company Coverage Section (the "D&O Coverage Section").

13. Section C.1.e. of the Policy's D&O Coverage Section, as amended by Endorsement Nos. 13, 14, 15 and 20 to the Policy provides that Scottsdale "shall not be liable for **Loss** under [the D&O Coverage Section] on account of any **Claim** . . . brought or maintained by, on behalf of, in the right of or at the direction of any **Insured** in any capacity, any **Outside Entity** or any person or entity that is an owner of or joint venture participant in any **Subsidiary** in any respect and whether or not collusive, unless such **Claim**:

> i.    is brought derivatively by a securities holder of the **Parent Company** and is instigated and continued totally independent of, and totally without the solicitation, assistance, active participation of, or intervention of, any **Insured**;

3

19835254v1

ii.  is brought or maintained by any **Insured** in the form of a cross-claim, third-party claim or other proceeding for contribution or indemnity which is part of, and directly results from a **Claim** that is covered by this Coverage Section;

iii.  is brought or maintained by an employee of the **Company** who is not or was not a director or officer of the **Company**, including any such **Claim** brought or maintained under the Federal False Claims Act or any similar federal, state, local or foreign "whistleblower" law or "whistle-blower" provision of any law;

iv.  is brought or maintained by any former director or officer of the **Company** solely in their capacity as a securities holder of the **Company** and where such **Claim** is solely based upon and arising out of **Wrongful Acts** committed subsequent to the date such director or officer ceased to be a director or officer of the **Company** and where such **Claim** is first made two years subsequent to the date such director or officer ceased to be a director or officer of the **Company**;

v.  is brought or maintained by or on behalf of a bankruptcy or insolvency receiver, trustee, examiner, conservator, liquidator or rehabilitator

4

19835254v1

for, or creditors' committee of, the **Company**, or any assignee thereof;

vi.    is brought or maintained in a jurisdiction outside the United States of America, Canada or Australia by any **Insured** of the **Company** solely where such **Company** is domiciled or chartered in such foreign jurisdiction; or

vii.    is brought by one or more of the **Directors and Officers** for any employment or employment-related matters."

(the "Insured versus Insured Exclusion")

14.    The term Insured is defined in Section B.5. of the Policy's D&O Coverage Section as the "Company" and the "Directors and Officers." The phrase "Directors and Officers" is in turn defined in Section B.4. of the Policy's D&O Coverage Section, as amended by Endorsement Nos. 12, 18 and 23 of the Policy, as any person who was, now is, or shall become (a) a duly elected or appointed director, officer, or similar executive of the "Company," or any member of the management board of the "Company"; (b) a person who was, is or shall become a full-time or part-time employee of the "Company"; (c) the functional equivalent of directors or officers of a "Company" incorporated or domiciled outside the United States of America; (d) any natural person who is a leased employee or is contracted to perform work for the "Company," is an independent contractor for the "Company," but only to the extent such individual performs work or services for or on behalf of the Company; (e) "Employed Lawyers" of the "Company"; or (f) a natural person member of the "Scientific or Advisory Board" of the "Company" that is indemnified by the "Company" pursuant to a written indemnification agreement.

5

19835254v1

15. Section C.1.f. of the Policy's D&O Coverage Section, as amended by Endorsement No. 2, provides that Scottsdale shall not be liable for "Loss" on account of any "Claim":

f. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving: i. any dishonest, deliberately fraudulent or criminal act of an **Insured**; provided, however this exclusion f.i. shall not apply unless and until there is a final judgment against such **Insured** as to such conduct (including the exhaustion of all appeals, petitions and rehearings in such **Claim**); or ii. the gaining of any profit, remuneration or financial advantage to which any **Directors and Officers** were not legally entitled; provided, however this exclusion f.ii. shall not apply unless and until there is a final judgment against such **Directors and Officers** as to such conduct (including the exhaustion of all appeals, petitions and rehearings in such **Claim**).

When f.i. or ii. apply, the **Insured** shall reimburse the **Insurer** for any **Costs, Charges or Expenses**.

16. Section C.1.k. of the Policy's D&O Coverage Section provides that Scottsdale shall not be liable for "Loss" on account of any "Claim":

k. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving: (i) any prior or pending litigation or administrative or regulatory proceeding, demand letter or formal or informal governmental

6

19835254v1

investigation or inquiry filed or pending on or before the **Continuity Date**; or (ii) any fact, circumstance, situation, transaction or event underlying or alleged in such litigation or administrative or regulatory proceeding, demand letter or formal or informal governmental investigation or inquiry. . .

The Policy's Continuity Date is December 1, 2012.

17.    Section C.1.l. of the Policy's D&O Coverage Section provides that Scottsdale shall not be liable for "Loss" on account of any "Claim":

l.    alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving, any **Wrongful Act**, fact, circumstance or situation which any of the Insureds had knowledge of prior to the **Continuity Date** where such Insureds had reason to believe at the time that such known **Wrongful Act** could reasonably be expected to give rise to such **Claim**; . . .

18.    Section C.2.a. of the D&O Coverage Section provides that Scottsdale shall not be liable under Insuring Clause A.3. for "Loss" incurred by the "Company" on account of any "Claim" "alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving the actual or alleged breach of any contract or agreement; except and to the extent the **Company** would have been liable in the absence of such contract or agreement."

19.    The Policy's D&O Coverage Section only affords coverage for certain "Loss" which is defined in Section B.7. of the D&O Coverage Section as specifically excluding the following:

7

19835254v1

**Loss** does not include:

a.  taxes, fines, or penalties;

b.  matters uninsurable under the laws pursuant to which this **Policy** is construed;

c.  punitive or exemplary damages, or the multiple portion of any multiplied damage award, except to the extent that such punitive or exemplary damages, or multiplied portion of any multiplied damage award are insurable under the internal laws of any jurisdiction which most favors coverage for such damages and which has a substantial relationship to the **Insureds**, **Insurer**, this Policy or the **Claim** giving rise to such damages;

d.  the cost of any remedial, preventative, or other non-monetary relief, including without limitation any costs associated with compliance with any such relief of any kind or nature imposed by any judgment, settlement, or governmental authority;

e.  any amount for which the **Insured** is not financially liable or legally obligated to pay;

f.  the costs to modify or adapt any building or property to be accessible or accommodating, or more accessible or accommodating, to any disabled person; or

g.  any amounts owed or paid to one or more securities holders of the **Company** under any written or express contract or agreement.

20.  As amended by Endorsement No. 1 of the Policy, Section O.1. of the General Terms and Conditions of the Policy provides:

8

19835254v1

1.      In the event the **Insurer** has the duty to defend a **Claim** under any Coverage Section in which both **Loss** that is covered by the applicable Coverage Section and loss which is not covered by the applicable Coverage Section is incurred, either because such **Claim** includes both covered and uncovered matters or because such **Claim** is made against both covered and uncovered parties, then:

a.  this **Policy** shall pay one hundred percent (100%) of **Costs, Charges and Expenses** incurred by such **Insured** on account of such **Claim**; and

b.  there shall be a fair and equitable allocation of any remaining loss incurred by such **Insured** on account of such **Claim** between covered **Loss** and uncovered loss based upon the relative legal and financial exposures and the relative benefits obtained.

2.      In the event the Insured has the duty to defend a Claim under any Coverage Section in which both Loss that is covered by the applicable Coverage Section and loss which is not covered by the applicable Coverage Section is incurred, either because such Claim includes both covered and uncovered matters or because such Claim is made against both covered and uncovered parties, then the Insured and the Insurer shall use their best efforts to determine a fair and proper allocation as between such insured and uninsured loss, taking into

19835254v1

account the relative legal and financial exposures and the relative benefits obtained.

### The Calligeros Claim

21.     John Calligeros is a minority shareholder in NMI. NMI's other two shareholders, who hold a majority of NMI's stock, are Defendants Howard Siegel and David Siegel.

22.     Mr. Calligeros served as an officer and director of NMI. As such, he is an "Insured" as defined in the Policy.

23.     On or about January 30, 2013 and February 19, 2013, Mr. Calligeros sent letters (the "Letters") to Defendants in which he requested certain documents from NMI and alleged that Howard Siegel and David Siegel had "treated [NMI] as their personal piggy bank and simply do whatever they want without regard to their other shareholder." The February 19, 2013 letter further threatened litigation if the parties could not resolve the dispute in mediation.

24.     Mr. Calligeros filed a lawsuit against Defendants on or about June 21, 2013, captioned John Calligeros v. Howard Siegel, et al., Case No. CV 512982 in the Superior Court of California, County of Los Angeles, Central District (the "Underlying Lawsuit"). A copy of the Complaint in the Underlying Lawsuit is attached as Exhibit B.

25.     The Letters and the Underlying Lawsuit, which comprise the Calligeros Claim, constitute a "Claim" brought by an "Insured."

### The Coverage Dispute

26.     Defendants notified Scottsdale of the Letters on April 4, 2013. Scottsdale informed Defendants of its preliminary coverage position with respect to the Calligeros Claims on April 19, 2013. Specifically, Scottsdale advised Defendants that coverage appeared to be barred by the Insured versus Insured Exclusion.

19835254v1

27.    Defendants notified Scottsdale of the Underlying Lawsuit on July 2, 2013.  Scottsdale informed Defendants of its supplemental coverage position with respect to the Calligeros Claim on July 16, 2013.  Specifically, Scottsdale agreed to defend Defendants in the Underlying Lawsuit subject to a reservation of its rights under the Policy and at law, including its rights with respect to the applicability of the Insured versus Insured Exclusion.

28.    Defendants have not disputed the fact that Mr. Calligeros is an Insured under the Policy and that the Calligeros Claim constitutes a "Claim" brought by an "Insured."  However, Defendants have contended that coverage is not barred for the Calligeros Claim by the Insured versus Insured Exclusion based on the exception to the Exclusion set forth in Section C.1.e. (iv).  Specifically, Defendants have asserted that the Calligeros Claim is not subject to the Insured versus Insured Exclusion because it "is brought or maintained by any former director or officer of the **Company** solely in their capacity as a securities holder of the **Company** and where such **Claim** is solely based upon and arising out of **Wrongful Acts** committed subsequent to the date such director and officer ceased to be a director or officer of the **Company** and where such **Claim** is first made two years subsequent to the date such director or officer ceased to be a director or officer of the **Company**."

29.    Scottsdale disagrees with Defendants' contention that the exception to the Insured versus Insured Exclusion set forth in Section C.1.e.(iv) is applicable to the Calligeros Claim.  In particular:

(a)  Corporate NMI documents Scottsdale has obtained reveal that Mr. Calligeros was an officer of NMI as of August 4, 2011 and appears to still be a director of NMI as there has been no record of any action removing him from that position.  Therefore, the Calligeros Claim, which was first made in February 2013, was not first

11

19835254v1

made two years subsequent to the date Mr. Calligeros ceased to be a director or officer of NMI so as to trigger the exception to the Insured versus Insured Exclusion set forth in Section C.1.e.(iv).

(b) Even if Mr. Calligeros ceased to be a director or officer of NMI prior to February 2011, the Calligeros Claim is not solely based upon and arising out of acts committed subsequent to the date Mr. Calligeros ceased to be a director or officer of NMI. In this regard, the Underlying Lawsuit alleges several "Wrongful Acts" that were committed by Defendants in 2005 and 2007 when Mr. Calligeros was indisputably still a director or officer of NMI, including (1) fraudulently inducing Mr. Calligeros to sign a Restrictive Stock Agreement in 2005; (2) breaching fiduciary duties by not holding shareholder or board meetings since at least 2007; (3) fraudulently inducing Mr. Calligeros to withdraw as an active employee of NMI in 2007; and (4) since May 2007 being in control of NMI and its financial decisions and running a massive amount of personal expenses through NMI.

30. In addition to the Insured versus Insured Exclusion, Scottsdale has reserved its rights under the Policy and available at law to raise other coverage issues and defenses in connection with the Calligeros Claim, including the right to deny coverage for the Lawsuit or sums incurred by the Insureds in the Lawsuit subject to the Policy's terms, conditions, and exclusions. Scottsdale continues to reserve its rights under the Policy and available at law to raise additional coverage issues and defenses with respect to the Calligeros Claim based on further discovery or developments.

12

19835254v1

# FIRST CLAIM FOR RELIEF

## (FOR DECLARATORY JUDGMENT AND REIMBURSEMENT)

31.  Scottsdale repeats and incorporates by reference the allegations in paragraphs 1 through 30 of this Complaint.

32.  Coverage for the Calligeros Claim is barred by the Policy's Insured versus Insured Exclusion since such "Claim" has been brought by an "Insured."

33.  The exception to the Insured versus Insured Exclusion set forth in Section C.1.e.(iv) of the Policy's D&O Coverage Section is not applicable to the Calligeros Claim because neither requirement necessary to trigger that exception has been met:  (i) the Calligeros Claim was not first made two years subsequent to the date Mr. Calligeros ceased to be a director or officer of NMI; and (ii) the Calligeros Claim is not solely based upon and arising out of acts committed subsequent to the date Mr. Calligeros ceased to be a director or officer of NMI.

34.  Because the Insured versus Insured Exclusion precludes coverage under the Policy for the Calligeros Claim, Scottsdale is entitled to recoup from NMI the Costs, Charges and Expenses that it has paid under the Policy for the defense of the Calligeros Claim.  See Buss v. Superior Court of Los Angeles County, 65 Cal. Rptr. 2d 366 (Cal. 1997).

35.  Based on information and belief, in addition to the Insured versus Insured Exclusion, coverage for the Calligeros Claim is precluded in whole or in part by one or more of the following terms, conditions or exclusions of the Policy: (1) Section C.1.f. of the D&O Coverage Section; (2) Section C.1.k. of the D&O Coverage Section; (3) Section C.1.l. of the D&O Coverage Section; (4) Section C.2.a.; and (5) uninsurable loss as defined in Section B.7. of the D&O Coverage Section.

36.  A judicial determination and declaration is necessary and appropriate at this time under the circumstances in order that Scottsdale may ascertain its

13

19835254v1

rights, duties and obligations under the Policy. Scottsdale will suffer irreparable harm unless the relief requested is granted, as it has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

### (FOR ALLOCATION)

37.    Scottsdale repeats and incorporates by reference the allegations in paragraphs 1 through 36 of this Complaint.

38.    In the event there is coverage under the Policy for some portion of the Calligeros Claim, Scottsdale is entitled to an allocation between covered and uncovered loss.

WHEREFORE, Scottsdale requests that the Court:

Count I

A.    Declare that any coverage for the Calligeros Claim is barred by the Policy's Insured versus Insured Exclusion and that Scottsdale does not have any defense or indemnity obligations with respect to the Calligeros Claim;

B.    Declare that coverage for the Calligeros Claim is barred by Section C.1.f. of the D&O Coverage Section, Section C.1.k. of the D&O Coverage Section, Section C.1.l. of the D&O Coverage Section, Section C.2.a., and/or Section B.7 of the D&O Coverage Section;

C.    Declare that Scottsdale is entitled to reimbursement from NMI of any Costs, Charges and Expenses that Scottsdale has paid under the Policy for the defense of the Calligeros Claim;

14

19835254v1

Count II

D.    In the event some portion of the Calligeros Claim is covered by the Policy, that an allocation be performed between "Loss" covered by the Policy and loss not covered by the Policy;

Counts I and II

E.    Award Scottsdale its costs and attorneys' fees as appropriate; and

F.    Award Scottsdale such additional relief that the Court deems just, necessary and proper.

DATED:  January 21, 2015        SEDGWICK LLP

By: */s/ Valerie D. Rojas*
Valerie D. Rojas
Attorneys for Plaintiff
SCOTTSDALE INSURANCE COMPANY

15

19835254v1